## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
PUBLIC CITIZEN, INC.,               )
                                       )
                 Plaintiff,      )
                                         )
           v.                  )      Civil Action No. 18-1047 (CKK)
                                         )
UNITED STATES DEPARTMENT OF   )
EDUCATION,                      )
                                         )
                 Defendant.    )
—————————————————————)

### PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E), and Federal Rule of Civil Procedure 54(d), Plaintiff Public Citizen, Inc., hereby moves for attorneys' fees and costs in the amount of $26,302.20, plus reasonable additional fees for future work performed in connection with this motion. Public Citizen submits the accompanying memorandum of law and declarations of Adam R. Pulver and Patrick D. Llewellyn, with supporting exhibits, in support of this motion, along with a proposed order.

Dated: June 20, 2019                        Respectfully submitted,

                                                  */s/ Adam R. Pulver*
                                                  Adam R. Pulver (DC Bar No. 1020475)
                                                  Patrick D. Llewellyn (DC Bar No. 1033296)
                                                  Public Citizen Litigation Group
                                                  1600 20th Street NW
                                                  Washington, DC 20009
                                                  (202) 588-1000
                                                  apulver@citizen.org

                                                  *Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
PUBLIC CITIZEN, INC.,                                 )
                                                      )
                          Plaintiff,                  )
                                                      )
           v.                                         )          Civil Action No. 18-1047 (CKK)
                                                      )
UNITED STATES DEPARTMENT OF                           )
EDUCATION,                                            )
                                                      )
                          Defendant.                  )
_____)


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD**
**OF ATTORNEYS' FEES AND COSTS**


Adam R. Pulver (DC Bar No. 1020475)
Patrick D. Llewellyn (DC Bar No. 1033296)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

I.      Plaintiff's FOIA Request ....................................................................................... 1

II.     This Litigation ..................................................................................................... 3

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT ................................................................................................................ 8

I.      Public Citizen is both eligible for and entitled to fees and costs .......................... 8

        A.      By prompting ED to release more than 447 pages of records, Public Citizen
                substantially prevailed ................................................................................ 8

        B.      Public Citizen is entitled to an award of attorneys' fees and costs ..................... 11

                1.      Public Citizen's request was calculated to obtain documents with
                        significant benefit to the public ....................................................... 12

                2.      Public Citizen had no significant private incentive to seek disclosure ...... 13

                3.      ED unreasonably withheld the requested records and initially made
                        unreasonable redactions ................................................................ 14

                        a.      ED had no basis for initially refusing to produce the requested
                                records ........................................................................... 14

                        b.      ED had no reasonable basis for the subsequently removed
                                redactions ...................................................................... 15

                4.      Eligibility should be the sole criterion ............................................ 17

II.     The fees and costs Public Citizen seeks are reasonable ..................................... 17

        a.      The hours billed were reasonable ................................................................ 17

        b.      The rates sought are reasonable ................................................................. 19

        c.      The Court should award "fees on fees." ....................................................... 21

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Page(s)**

*American Immigration Council v. U.S. Department of Homeland Security*,
    82 F. Supp. 3d 396 (D.D.C. 2015) ............................................................................10, 11

*American Oversight v. U.S. Department of Justice*,
    375 F. Supp. 3d 50, 2019 WL 1330481 (D.D.C. Mar. 25, 2019) ...........................8, 14, 20

*Baker & Hostetler LLP v. U.S. Department of Commerce*,
    473 F.3d 312 (D.C. Cir. 2006) ...............................................................................................15

*Beltranena v. U.S. Department of State*,
    821 F. Supp. 2d 167 (D.D.C. 2011) .......................................................................................16

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...............................................................................................................19

*Board of Trustees of the Hotel & Restaurant Employees Local 25 v. JPR, Inc.*,
    136 F.3d 794 (D.C. Cir. 1998) ...............................................................................................17

*Brayton v. Office of the U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011) .................................................................................................7

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*,
    532 U.S. 598 (2001) .................................................................................................................9

*Burka v. U.S. Department of Health & Human Services*,
    142 F.3d 1286 (D.C. Cir. 1998) ...............................................................................................9

*Chesapeake Bay Foundation, Inc. v. USDA*,
    11 F.3d 211 (D.C. Cir. 1993) ...................................................................................................9

*Citizens for Responsibility & Ethics in Washington v. U.S. Department of Health & Human Services*,
    481 F. Supp. 2d 99 (D.D.C. 2006) .........................................................................................13

*Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*,
    80 F. Supp. 3d 1 (D.D.C. 2015) .............................................................................................20

*Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice*,
    820 F. Supp. 2d (D.D.C. 2011) ..............................................................................................14

*Clemente v. FBI*,
    No. 1:08-cv-1252-BJR, 2017 WL 3669617 (D.D.C. Mar. 24, 2017) ..............................20

*Coastal States Gas Corporation v. Department of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ...................................................................................16, 17

*Cotton v. Heyman*,
    63 F.3d 1115 (D.C. Cir. 1995) ............................................................................................13

*Davy v. CIA*,
    550 F.3d 1155 (D.C. Cir. 2008) ...........................................................................11, 12, 14, 17

*Davy v. CIA*,
    456 F.3d 162 (D.C. Cir. 2006) ..............................................................................................8

*DL v. District of Columbia*,
    924 F.3d 585 (D.C. Cir. 2019) .............................................................................................19

*Electronic Privacy Information Center v. FBI*,
    80 F. Supp. 3d 149 (D.D.C. 2015) .......................................................................................18

*Electronic Privacy Information Center v. U.S. Drug Enforcement Administration*,
    266 F. Supp. 3d 162 (D.D.C. 2017) .....................................................................................20

*Electronic Privacy Information Center v. U.S. Department of Homeland Security*,
    218 F. Supp. 3d 27 (D.D.C. 2016) ...........................................................8, 10, 11, 17, 20

*Electronic Privacy Information Center v. U.S. Department of Homeland Security*,
    982 F. Supp. 2d 56 (D.D.C. 2013) .......................................................................................18

*Electronic Privacy Information Center v. U.S. Department of Homeland Security*,
    811 F. Supp. 2d 216 (D.D.C. 2011) ................................................................................9, 14

*Eley v. District of Columbia*,
    793 F.3d 97 (D.C. Cir. 2015) ..............................................................................................19

*Fenster v. Brown*,
    617 F.2d 740 (D.C. Cir. 1979) ............................................................................................13

*Fox v. Vice*,
    563 U.S. 826 (2011) ...........................................................................................................15

*Forest Guardians v. U.S. Department of Interior*,
    416 F.3d 1173 (10th Cir. 2005) ..........................................................................................13

*Gatore v. U.S. Department of Homeland Security*,
    286 F. Supp. 3d 25 (D.D.C. 2017) ..................................................................20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................15

*Judicial Watch, Inc. v. Food & Drug Administration*,
    449 F.3d 141 (D.C. Cir. 2006) ........................................................................15

*Judicial Watch, Inc. v. U.S. Department of Justice*,
    878 F. Supp. 2d 225 (D.D.C. 2012) ..................................................................9

*McKinley v. Federal Housing Finance Agency*,
    739 F.3d 707 (D.C. Cir. 2014) ........................................................................11

*Mead Data Central, Inc. v. U.S. Department of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................16

*Morley v. CIA*,
    719 F.3d 689 (D.C. Cir. 2013) ........................................................................17

*Morley v. CIA*,
    810 F.3d 841 (D.C. Cir. 2016) ........................................................................12

*Morley v. CIA*,
    894 F.3d 389 (D.C. Cir. 2018) ........................................................................17

*Natural Resources Defense Council v. EPA*,
    581 F. Supp. 2d 491 (S.D.N.Y. 2008) .............................................................13

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
    771 F.2d 521 (D.C. Cir. 1985) ........................................................................21

*Petroleum Information Corp. v. Department of the Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ......................................................................16

*Poulsen v. Department of Homeland Security*,
    No. CV 13-498 (CKK), 2016 WL 1091060 (D.D.C. Mar. 21, 2016) ...............8, 9, 20

*Reed v. District of Columbia*,
    843 F.3d 517 (D.C. Cir. 2016) ........................................................................20

*Reyes v. U.S. National Archives & Records Administration*,
    356 F. Supp. 3d 155 (D.D.C. 2018) ..................................................7, 8, 15, 18, 21

*Salazar v. District of Columbia*,
    809 F.3d 58 (D.C. Cir. 2015) ..........................................................................19

iv

**STATUTORY PROVISIONS**

5 U.S.C. § 552(a)(4)(E)(i)..................................................................................................7

5 U.S.C. § 552(a)(4)(E)(ii).................................................................................................8

5 U.S.C. § 552(a)(6)(C)(i)..................................................................................................3

5 U.S.C. § 552(a)(7)(B)(ii).................................................................................................9

5 U.S.C. § 552(b).............................................................................................................16

**MISCELLANEOUS**

Anya Kamenetz & Cory Turner, "DeVos Seeks to Rewrite the Rules on Higher Ed," National
Public Radio, Aug. 2, 2018,
          https://www.npr.org/2018/08/02/634398751/devos-seeks-to-rewrite-the-rules-on-higher-
          ed..................................................................................................................12

ED Monthly List of Press Releases,
          September 2017, https://www.ed.gov/news/press-releases/monthly/201709...................12
          October 2017, https://www.ed.gov/news/press-releases/monthly/201710......................12

Erica L. Green, "Sex Assault Rules Under DeVos Bolster Defendants' Rights and Ease College
Liability," N.Y. Times, Nov. 16, 2018,
          https://www.nytimes.com/2018/11/16/us/politics/betsy-devos-title-ix.html....................12

Lydia Wheeler, "Trump to address regs rollback amid tax reform push," The Hill, Sept. 27,
2017,
          http://thehill.com/regulation/administration/352741-trump-to-address-regs-rollback-
          amid-tax-reform-push ...............................................................................2, 13

## INTRODUCTION

Plaintiff Public Citizen submitted a FOIA request to Defendant U.S. Department of Education (ED) in October 2017 concerning an event that ED referred to as "Deregulation Day." In connection with the event, ED invited select members of the public to hear the Secretary of Education and other ED officials discuss their deregulatory goals. For seven months after receipt of the FOIA request, ED did not provide a substantive response to that request, and it refused to provide an estimate as to when it would. As a result, in May 2018, Public Citizen commenced this action. Over the next six months, under this Court's supervision, ED produced 447 pages of responsive documents. After negotiation with Plaintiff's counsel, ED later removed some or all of its redactions on sixteen of the pages.

ED's productions were made pursuant to multiple Court orders, and the litigation served as a catalyst for their production. Plaintiff is thus eligible for an award of reasonable attorneys' feesand costs for the work incurred in obtaining the responsive records. Further, because the underlying FOIA request was calculated to obtain documents with significant benefit to the public, and ED's failure to produce any documents for eight months and its subsequently removed redactions were unreasonable, Plaintiff is entitled to fees under existing D.C. Circuit precedent. Plaintiff is also entitled to attorneys' fees for the time spent on this motion. The Court should thus award Plaintiff its reasonable attorneys' fees and costs, as justified below and in the supporting exhibits.

## BACKGROUND

### I.    Plaintiff's FOIA Request

In September 2017, the White House announced that, as part of a White House-coordinated effort, ten federal agencies would be holding events highlighting their plans for "deregulation" on

October 2, 2017. *See* Lydia Wheeler, "Trump to address regs rollback amid tax reform push," The Hill, Sept. 27, 2017, http://thehill.com/regulation/administration/352741-trump-to-address-regs-rollback-amid-tax-reform-push; *see also* Ex. 1 (FOIA Request) at 1 n.1 (collecting sources).[1] Because the content of these events and the process by which individuals would be invited to them were not described, Plaintiff Public Citizen submitted substantively identical FOIA requests to three agencies: ED, the Department of Agriculture (USDA), and the Department of Labor (DOL). *See* Pulver Decl., Exs. 1, 2 (USDA request), and 3 (DOL request). The requests, sent on October 2 and 3, 2017, sought three categories of documents:

> (1) Communications between the agency and outside entities "concerning 'breakout sessions,' 'break-out sessions' or 'roundtables' scheduled for October 2, 2017, relating to the regulatory agenda, regulatory reform, deregulation, rulemaking, and/or the regulatory process;"
>
> (2) Agency "policies, procedures, or guidance regarding which individuals or organizations would be invited to the October 2, 2017 break-out sessions;" and
>
> (3) "Any policies, procedures, or guidance received from the White House, Office of Management and Budget, and/or other non-[agency] individual or entity regarding which individuals or organizations should be invited to the October 2, 2017 break-out sessions."

*Id.* at 1.

On October 6, 2017, ED acknowledged receipt of the request. Ex. 5 at 2. On October 17, 2017, ED provided an "interim response," indicating that ED's Office of Planning, Evaluation, & Policy Development had not located any responsive documents. Ex. 4. The interim response stated that ED was continuing to process the request and would not close the request "until the Department provides [Public Citizen] with a response regarding outstanding responsive documents from [the other specified components of ED]." *Id.* at 1.

---

[1] All referenced exhibits are attached to the concurrently filed Declaration of Adam R. Pulver.

Public Citizen emailed follow-up queries asking for status updates on January 4, 2018, and February 1, 2018. Ex. 5 at 1–2. In response to each, ED stated that a search for responsive records was ongoing, with no detail. *Id.* In a February 8, 2018 email, ED stated it could not provide an estimated completion date. *Id.* at 1.

In the meantime, the two other agencies to which Public Citizen submitted requests provided responsive documents. *See* Exs. 6, 7.

## II.  This Litigation

On May 3, 2018, seven months after submitting its FOIA request to ED, Public Citizen filed this action pursuant to 5 U.S.C. § 552(a)(6)(C)(i). ECF 1. ED answered the complaint on June 6, 2018. ECF 8.

On June 7, 2018, this Court issued an order directing the parties to meet and confer and to file a joint status report and production schedule no later than June 27, 2018. ECF 9. On June 18, 2018, Public Citizen's counsel began making efforts to meet and confer, per the Court's order. Pulver Decl. ¶ 7. On June 27, 2018, ED's counsel, for the first time, provided information about the status of the FOIA request, and the parties were able to agree to a production schedule by which the agency would make a partial production by July 6, 2018. *Id.*; ECF 10. On June 28, 2018, this Court issued a minute order stating, in part:

> The Court expects Defendant to be diligently processing Plaintiff's FOIA request. Defendant represents that it will produce certain records by July 6, 2018, and the Court expects Defendant to do so and also to produce any responsive records it finds on a rolling basis as possible. The Court of course also expects the parties to continue to meet and confer.

June 28, 2018 Minute Order. As part of its continued supervision of the production, the Court ordered the parties to submit a further status report by July 18, 2018. *Id.*

On July 6, 2018, ED produced 19 pages of responsive documents, 3 of which were redacted entirely, and 1 of which was redacted in part ("the First Production"). Pulver Decl. ¶ 8; Ex. 8.[2] The records indicated that the redactions were based on FOIA exemptions 5 and/or 6 without any further accompanying explanation. *Id.*

In July 2018, the parties' counsel negotiated over the contents of the parties' court-ordered joint status report. Pulver Decl. ¶ 9. On July 18, 2018, the parties filed a second joint status report indicating that ED anticipated producing all responsive documents by August 6, 2018. ECF 11. On July 19, 2018, the Court issued a second minute order, endorsing the parties' proposed production schedule and directing a further status report by August 13, 2018. July 19, 2018 Minute Order.

On August 6, 2018, ED produced two sets of documents and indicated that these records constituted its "final release." Pulver Decl. ¶ 10; Ex. 9. One set of records consisted of 96 pages from the Office of Communications and Outreach (OCO); the other set consisted of 332 pages from the Office of the Secretary (OS) (together, the "Second Production"). *Id.*[3] Both sets of records were heavily redacted. Pulver Decl. ¶ 10. For example, 33 of the 96 pages of OCO documents were entirely redacted, and nearly every other page was redacted in part. *Id.* The redactions were marked as FOIA exemptions 5 and/or 6, without any accompanying explanation. *Id.*

Plaintiff's counsel reviewed the productions and, on August 10, 2018, in a good-faith attempt to narrow the scope of disputes, provided ED with a list of documents as to which it sought an explanation for the redaction. Ex. 10. This list included approximately 35 documents from the

---

[2] Although the documents were not Bates-stamped by ED, Plaintiff marked the documents as OCO-1 1 through 19 for identification purposes.

[3] For identification purposes, Plaintiff marked these documents OCO-2 1 through 96 and OS 1 through 332.

Second Production. *Id.* The parties then negotiated over the contents of the third Court-ordered status report, which they filed on August 13, 2018. ECF 12. On that same day, the Court issued a third minute order, endorsing the proposed schedule and directing the parties to file a fourth joint status report by September 13, 2018. Aug. 13, 2018 Minute Order.

After the agency failed to respond to Plaintiff's request for additional information over the next month, the parties negotiated a fourth joint status report, which they filed on September 13, 2018, per the Court's order. ECF 13. The Court issued a fourth minute order the following day, directing the parties to file a fifth joint status report by October 3, 2018. Sept. 14, 2018 Minute Order.

On September 18, 2018, ED provided information to Plaintiff about the basis for some of the redactions in the August 2018 productions. *See* Ex. 11. The explanations were generally vague; for example, for 13 documents, the agency simply stated "Deliberation/attorney consultation regarding vetting attendees." *Id.* at 3–6. Plaintiff's counsel reviewed this explanation and, on September 22, 2018, sent a detailed response requesting either further information explaining some of the redacted/withheld records or disclosure of redacted material. Ex. 12 at 11–13. ED indicated that it would not be able to provide a further response for another month; thus, the parties negotiated a fifth joint status report, which they filed on October 1, 2018. ECF 14. The Court then issued a fifth minute order, directing ED to respond by October 19, 2018, directing the parties to file a sixth joint status report by October 26, 2018, and stating that, "if any outstanding issues are remaining" the parties should "propose a schedule for cross-motions for summary judgment." Oct. 1, 2018 Minute Order.

Although the Court had ordered ED to respond to Plaintiff by October 19, 2018, *see id.*, ED did not do so until October 24, 2018, when it responded to *some* of the issues raised by Plaintiff

on September 22, 2018. Ex. 12 at 8–9. In that response, ED provided additional information about some of the redactions and produced six of the pages it had previously redacted in their entirety ("the Third Production"). *Id.* Because a joint status report was due two days later, the parties began discussing the content of that report and negotiating a summary judgment briefing schedule.

On October 25, 2018, the day before the Court-ordered deadline for the sixth joint status report, ED provided the remainder of the response it had been ordered to provide by October 19, 2018. Ex. 12 at 5–6. In this response, ED re-produced five pages related to correspondence between ED and the Office of Information and Regulatory Affairs (OIRA), having removed redactions on each of the five pages ("the Fourth Production"). Plaintiff expressed concerns about a number of the redactions. *Id.* The parties filed a sixth joint status report, including a proposed briefing schedule, on October 26, 2018. ECF 15. The Court then issued a sixth minute order setting a briefing schedule for cross-motions for summary judgment. Oct. 26, 2018 Minute Order.

On November 15, 2018, ED made a fifth release—the Secretary of Education's remarks for the October 2, 2017 event, which ED had previously withheld in full. Ex. 12 at 4–5.

The parties continued to attempt to narrow the scope of the documents at issue for summary judgment. Notably, Plaintiff surmised that several documents in the Fourth Production had been produced by other agencies without the redactions that ED made. To avoid litigation over records already in Plaintiff's possession, Plaintiff sought confirmation from ED that these records were indeed the same ones that ED was withholding. Ex. 12 at 2–3. ED provided that confirmation on November 30, 2018. *Id.* at 1. Plaintiff's counsel then assessed the production in light of this confirmation. Pulver Decl. ¶ 16.

On December 4, 2018, ED filed its motion for summary judgment as to the remaining disputed documents. ECF 16. The parties completed briefing on their cross-motions for summary

judgment on March 15, 2019. ECF 23. On April 1, 2019, the Court issued an order requiring production of the disputed documents for in camera review. Apr. 1, 2019 Minute Order. Upon reviewing those documents, the Court issued an order requiring ED to submit a supplemental, *ex parte* brief explaining why some of the challenged "redactions are or are not pre-decisional and covered by the deliberative process privilege." Apr. 12, 2019 Minute Order. On May 22, 2019, the Court issued an order and opinion granting ED's motion for summary judgment and denying Plaintiff's cross-motion for summary judgment. ECF 27 & 28.

On May 28, 2019, Plaintiff's counsel sent ED's counsel a fee demand in an attempt to resolve the outstanding issues in the case. Pulver Decl. ¶ 17. Plaintiff's counsel stated that it did not seek attorneys' fees for work performed after December 3, 2018 (i.e., work in connection with the parties' summary judgment motions). *Id.* On May 31, 2019, ED's counsel informed Plaintiff's counsel that ED would not agree to pay any attorneys' fees or costs in this matter. *Id.* at ¶ 18.

## LEGAL STANDARD

Courts in FOIA cases have authority to award "reasonable attorney fees and other litigation costs reasonably incurred" to a plaintiff who "has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Under D.C. Circuit precedent, "the attorney-fee inquiry is divided into two prongs, the fee 'eligibility' and the fee 'entitlement' prongs." *See Reyes v. U.S. Nat'l Archives & Records Admin.*, 356 F. Supp. 3d 155, 161 (D.D.C. 2018) (citing *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011)). If the plaintiff meets both these prongs, "the Court considers the reasonableness of the fees requested."

**ARGUMENT**

I.    **Public Citizen is both eligible for and entitled to fees and costs.**

    A. **By prompting ED to release more than 447 pages of records, Public Citizen substantially prevailed.**

A FOIA plaintiff is "eligible" for fees where it "has substantially prevailed upon obtaining relief either through a judicial order, enforceable written agreement, consent decree or, alternatively, through a voluntary or unilateral change in position by the agency, if the plaintiff's claim is not insubstantial." *Reyes*, 356 F. Supp. 3d at 161 (citing 5 U.S.C. § 552(a)(4)(E)(ii)(I-II)). Courts have referred to these two alternatives as the "judicial order" and "catalyst" theories. *See, e.g.*, *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 2019 WL 1330481, at *3 (D.D.C. Mar. 25, 2019); *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.* (*EPIC III*), 218 F. Supp. 3d 27, 39 (D.D.C. 2016). ED's production of 447 pages of responsive documents, and its subsequent removal of redactions on 16 of those pages, pursuant to seven court orders, makes Public Citizen eligible under either theory.

First, as this Court has held, "voluntary" production of responsive records over the course of litigation, without motion practice, can be sufficient for a plaintiff to be eligible for fees under the "judicial order" theory where "the Court issued numerous orders supervising the search, review, and production of responsive documents." *Poulsen v. Dep't of Homeland Sec.*, No. CV 13-498 (CKK), 2016 WL 1091060, at *3 (D.D.C. Mar. 21, 2016). That is exactly what occurred here: Public Citizen obtained production of responsive documents as a result of seven court orders issued between June 7, 2018, and October 26, 2018, supervising and setting schedules for production. These orders constituted a "judicially sanctioned change in the legal relationship between the parties." *Am. Oversight*, 2019 WL 1330481, at *4 (quoting *Davy v. CIA* ("*Davy I*"), 456 F.3d 162, 166 (D.C. Cir. 2006)); *see also Poulsen*, 2016 WL 1091060, at *3.

8

Second, the litigation plainly served as a catalyst for ED's production. Under the catalyst theory, a requester is entitled to fees where "the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 231 (D.D.C. 2012) (quoting *Burka v. U.S. Dep't of Health & Hum. Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998)). "Although the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation, it is nonetheless a salient factor in the analysis." *Id.* (citations and marks omitted).

Here, "Defendant did not produce any documents until Plaintiff filed [it]s Complaint." *Poulsen*, 2016 WL 1091060, at *3. Even more, not only did ED fail to respond to Plaintiff's FOIA request in the seven months prior to litigation, it refused to provide an estimated production date, as required by FOIA. *See* 5 U.S.C. § 552(a)(7)(B)(ii). Public Citizen thus reasonably concluded that litigation was necessary to obtain production. *Cf. Chesapeake Bay Found., Inc. v. USDA*, 11 F.3d 211, 216 (D.C. Cir. 1993) (noting that "reasonable necessity [is] determined from the perspective of a reasonable person in the position of the requester"), abrogated on other grounds by *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601–02 (2001). Even if ED would have eventually gotten around to producing responsive records, "the productions would have been, at a minimum, less prompt and potentially less inclusive had they not occurred under the supervision of this Court during the pendency of this litigation." *Poulsen*, 2016 WL 1091060, at *3; *see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.* (*EPIC I*), 811 F. Supp. 2d 216, 233 (D.D.C. 2011) (holding that the plaintiff was entitled to attorneys' fees given agency's "long record of noncompliance to the plaintiff's FOIA requests, followed by [its] disclosure of a substantial quantity of non-exempt records in response to this

suit"). Finally, even when ED produced what it deemed a "final release," continued negotiation, pursuant to the court-ordered schedule, resulted in ED producing additional responsive material.

The fact that Plaintiff did not prevail on its motion for summary judgment as to redactions on thirteen pages of responsive documents does not mean that Plaintiff did not "substantially prevail." Importantly, Plaintiff is not seeking to recover fees for any time spent in briefing the cross-motions for summary judgment. And Plaintiff's success in obtaining 447 pages of responsive records is not diminished by the decision as to those thirteen pages. Courts in this district have routinely found a FOIA plaintiff to have substantially prevailed when litigation caused an agency to make a substantial production, even where the plaintiff was unsuccessful in obtaining further production at the summary judgment stage. *See, e.g.*, *EPIC III*, 218 F. Supp. 3d at 40–43; *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 404 (D.D.C. 2015).

In *American Immigration Council*, for example, over a six-month period after commencement of the litigation, the parties engaged in negotiations over the agency's response to a FOIA request, which eventually led to the disclosure of 156 responsive records. *See* 82 F. Supp. 3d at 396. Once the parties reached a "standstill," the agency moved for summary judgment with respect to redactions in seven documents, which the court granted. *Id.* at 401. On a motion for attorneys' fees, however, the court rejected the agency's argument that the plaintiff did not substantially prevail because the court had granted summary judgment to the agency on the seven documents. As the court explained:

> To be eligible for fees, a complainant must only *substantially*—not completely—
> prevail. That the Court ultimately acquiesced to Defendants' withholdings in seven
> documents does not mean that AIC is stripped of its eligibility for fees. Because
> Plaintiff's suit caused CBP to release at least 156 responsive records—154 more
> than they produced before litigation ensued—AIC "substantially prevailed" as a
> result of bringing suit. As mentioned earlier, moreover, Plaintiff does not seek
> remuneration for the time spent opposing the Government's Second Motion.

*Id.* at 404.

"The eligibility inquiry focuses on whether a plaintiff obtained relief—*i.e.*, his requested records—through litigation." *Id.* at 404. Public Citizen substantially obtained that relief here. As in *American Immigration Council*, the redactions addressed on summary judgment entail a small number of documents as compared to the total number of pages of responsive records produced for the first time in response to Plaintiff's lawsuit. And Public Citizen's "work prior to summary judgment was related and reasonably calculated to achieve the goal of production, and much of it was necessitated by very substantial delays by [ED]." *EPIC III*, 218 F. Supp. 3d at 50. Because the record reflects that "Plaintiff's lawsuit served as a necessary catalyst for the agency's release of [a] significant body of responsive material," *id.*, Public Citizen is eligible for fees.

**B.  Public Citizen is entitled to an award of attorneys' fees and costs.**

Public Citizen also meets the requirements of the entitlement prong under D.C. Circuit case law. This precedent requires the balancing of four factors, none of which is dispositive: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (internal quotation marks omitted). The second and third factors typically merge into the single question "whether a plaintiff has sufficient private incentive to seek disclosure of the documents without expecting to be compensated for it." *Id.* (citations and internal quotation marks omitted). Taken together, the first three factors help distinguish "between requesters who seek documents for public informational purposes," on the one hand, and "those who seek documents for private advantage," on the other. *Davy v. CIA* (*Davy II*), 550 F. 3d 1155, 1160 (D.C. Cir. 2008). The former "typically need the fee incentive to pursue litigation," whereas the latter "benefit only

themselves and typically need no incentive to litigate." *Id.* All four factors weigh in favor of a fee award here.

### 1. Public Citizen's request was calculated to obtain documents with significant benefit to the public.

In evaluating the first factor, the "public benefit", courts conduct "an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley v. CIA* (*Morley II*), 810 F.3d 841, 844 (D.C. Cir. 2016). Where it is "plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Id.*

Plaintiff's request easily meets this standard. The request sought information about an event where a member of the cabinet spoke to selected members of the public about a federal agency's regulatory agenda. There is a strong public interest in ED's regulatory plans, as ED has engaged in many high-profile and controversial rulemakings since 2017, affecting a wide range of stakeholders. *See, e.g.*, Erica L. Green, "Sex Assault Rules Under DeVos Bolster Defendants' Rights and Ease College Liability," N.Y. Times, Nov. 16, 2018, https://www.nytimes.com/2018/ 11/16/us/politics/betsy-devos-title-ix.html; Anya Kamenetz & Cory Turner, "DeVos Seeks to Rewrite the Rules on Higher Ed," Nat'l Public Radio, Aug. 2, 2018, https://www.npr.org/2018/08/ 02/634398751/devos-seeks-to-rewrite-the-rules-on-higher-ed. Yet, ED issued no press releases about this event—either before or after. *See* ED Monthly List of Press Releases, September 2017, https://www.ed.gov/news/press-releases/monthly/201709, and October 2017, https://www.ed. gov/news/press-releases/monthly/201710. The public also has an interest in knowing how ED determined which stakeholders to invite to the events. As confirmed by ED's production, there was no public notice as to how to attend the event or otherwise receive the information that was distributed at the event. The only information came from an anonymous White House official who

spoke to reporters, days before the event, and indicated that staff of ED, among other agencies, would "talk about 'how they can make regulation smarter, more efficient and less burdensome on our economy.'"  Wheeler, *supra*. "How government agencies interact with private concerns as the agencies set policy affecting the public interest" is "an issue of the utmost importance" *Natural Res. Def. Council v. EPA*, 581 F. Supp. 2d 491, 498 (S.D.N.Y. 2008). "An understanding of how [a federal agency] makes policy decisions, including the influence of any outside groups on this process, is also important to the public's understanding of the [government]." *Id.* (quoting *Forest Guardians v. U.S. Dep't of Interior*, 416 F.3d 1173, 1179 (10th Cir. 2005)). *See also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 108–09 (D.D.C. 2006) (holding request for communications between agency and public affairs firms would disclose meaningfully informative records regarding "the individuals and organizations that influence, or attempt to influence, public opinion regarding [the agency] and its policies and programs").

The thousands of members of the public impacted by ED regulations had an interest in knowing more about the agency's plans. Plaintiff's request for information about the "Deregulation Day" event was thus reasonably calculated "to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)).

### 2.  Public Citizen had no significant private incentive to seek disclosure.

The second and third entitlement factors, examining the commercial benefit to the plaintiff and the plaintiff's interest in the records sought, also weigh in favor of entitlement. Public Citizen is a non-profit organization that sought the requested records to further its mission of promoting openness and democratic accountability in government. *See* Ex. 1 at 2–4. It had no commercial

interest in the records sought, and it intended to disseminate the records free of charge and to utilize them in its ongoing work informing members of the public about government transparency and regulatory issues. *Id.* Courts in this district have regularly found organizations with similar interests to be entitled to fees. *See, e.g.*, *Am. Oversight*, 2019 WL 1330481, at *8; *EPIC I*, 811 F. Supp. 2d at 235; *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 820 F. Supp. 2d at 45 (D.D.C. 2011).

### 3. ED unreasonably withheld the requested records and initially made unreasonable redactions.

The final entitlement factor, the reasonableness of ED's withholding of the requested documents, also weighs in favor of a fee award. Neither ED's refusal to produce *any* documents in the first nine months after the request was submitted, nor its initial redactions under FOIA exemption 5 were reasonable.

#### a. ED had no basis for initially refusing to produce the requested records.

In evaluating the fourth factor, the agency has the burden of showing that it had a "colorable or reasonable basis for not disclosing the [requested] material until after [Plaintiff] filed suit." *Davy II*, 550 F.3d at 1163. ED's initial failure to disclose the requested documents, even in redacted form— or to even provide Plaintiff with an estimated response date, as required by FOIA—had no such basis.

Notably, the two other agencies to which Public Citizen submitted substantively identical requests each responded months before ED. ED did not offer any lawful justification for its delay in responding to the request. *See EPIC I*, 811 F. Supp. 2d at 235–36 (finding that agency unreasonably withheld records where it neither provided plaintiff with any information about its FOIA request prior to suit nor made use of "statutory mechanisms by which it could extend its time to respond to the FOIA request"). In its answer, ED did not assert that any extraordinary

14

circumstances justified its failure to respond to the request in a timely fashion. ECF 8.

Moreover, ED cannot properly claim that a FOIA backlog justified its refusal to provide responsive records (or even an estimated date of completion). "[T]he purposes behind the fourth factor of the test for entitlement to attorneys' fees … would not be served if it were reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members." *Reyes*, 356 F. Supp. 3d at 168. In *Reyes*, this Court held that a failure to respond to the plaintiff's FOIA request for over 120 days, only responding after the filing of suit, was unreasonable. This case involves a delay of more than twice as long. This alone should entitle Public Citizen to all fees reasonably incurred in obtaining production, since ED's unreasonable withholding is what triggered the litigation in the first place.

### b. ED had no reasonable basis for the subsequently removed redactions.

In addition to an unreasonable delay releasing responsive records, many of the redactions, and the way they were presented, were unreasonable. Cognizant of the tenet that "[t]he determination of fees 'should not result in a second major litigation,'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), Plaintiff highlights only three examples here.

First, when ED did produce documents, it failed to provide any accompanying explanation of the numerous redactions. It is the agency's burden to provide a requester sufficient information for it to evaluate the agency's claim of privilege. *See, e.g.*, *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006); *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). ED's failure to provide such information with its initial productions unreasonably prolonged the litigation. Indeed, when ED *did* provide such information, the parties significantly narrowed the number of redactions in dispute.

15

Second, in the Third Production, ED removed redactions in emails, in its words, "to segregate out the non-exempt material." Ex. 12 at 9. ED's failure to initially segregate out non-exempt material was unreasonable; the duty to do so is contained in the plain text of FOIA, 5 U.S.C. § 552(b); *see also Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167 (D.D.C. 2011) (citing *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Finally, ED redacted a number of emails and documents produced by other agencies in unredacted form. Although the fact that other agencies chose not to make the same redactions does not make ED's redactions *de facto* unreasonable, the specific redactions at issue clearly were. For example, OS 294, an email from a White House staff member to officials at ten different agencies, containing logistical information, began with the sentence, "Thank you very much for your patience, coordination and compliance with your ethics office." Ex. 13. ED redacted the words "compliance with your ethics office," asserting the deliberative process privilege. Ex. 14. As this Court explained in ruling on the parties' summary judgment motions, "[b]ecause Exemption 5's goal is to 'prevent injury to the quality of agency decisions,' the deliberative process privilege can apply only to deliberative processes the results of which are or will be agency policy." Mem. Op. at 9 (ECF 28) (quoting *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)). The privilege applies only to documents "prepared in order to assist an agency decision maker in arriving at his decision, rather than to support a decision already made." *Id.* This email, containing logistical information and thanking people for cooperating with ethics offices *in the past* plainly does not qualify. Moreover, the privilege only applies where "disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). It is unreasonable to suggest that it would

16

"chill" agency decisionmaking if the public were aware that agency officials complied with their ethics offices.

### 4. Eligibility should be the sole criterion.

Members of the D.C. Circuit have questioned whether that court's entitlement prong is properly part of the standard for assessing an award of attorneys' fees under FOIA. *See Morley v. CIA* (*Morley III*), 894 F.3d 389, 392 n.1 (D.C. Cir. 2018) (per curiam); *Morley v. CIA* (*Morley I*), 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J., concurring); *Davy II*, 550 F.3d 1155, 1166 (D.C. Cir. 2008) (Randolph, J., dissenting). Although, as discussed above, Public Citizen is both eligible and entitled to fees under the Circuit's case law, Plaintiff agrees with the position expressed in then-Judge Kavanaugh's concurring opinion in *Morley I* that the entitlement prong is not supported by the statute and that the inquiry should focus solely on eligibility. *See* 719 F.3d at 690. Plaintiff raises this point to preserve the issue in case of an appeal.

## II.    The fees and costs Public Citizen seeks are reasonable.

Public Citizen seeks an award of $25,902.20 in attorneys' fees and $400.00 in costs.[4] Given the hours worked and the applicable billing rates, this total is reasonable and should be awarded by the Court. In calculating reasonable attorneys' fees in FOIA cases, courts "calculate[e] the 'lodestar'—the number of hours reasonably expended multiplied by a reasonable hourly rate." *EPIC III*, 218 F. Supp. 3d at 47 (citing *Bd. of Trs. of the Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

### a.    The hours billed were reasonable.

This case was leanly staffed. Public Citizen seeks to recover for hours worked by only two

---

[4] The sole costs sought are the filing fee of $400. *See* ECF 1.

attorneys, with the vast majority of time spent by one attorney. As demonstrated by contemporaneous, detailed time records, Ex. 15, these attorneys put in a total of 15.3 hours over a six-month period, to prepare the complaint, communicate with opposing counsel (including negotiations over production schedules, the scope of production, specific redactions, and the content of six separate joint status reports), and review each of ED's five separate productions. These are all compensable tasks, and the modest amount of time spent on them is reasonable.

As this Court has held, "to the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fees award." *Elec. Privacy Info. Ctr. v. FBI* (*EPIC II*), 80 F. Supp. 3d 149, 159 (D.D.C. 2015); *see also Reyes*, 356 F. Supp. at 172. As in *EPIC II*, Plaintiff's counsel's review of the produced documents led to challenges of some of ED's withholdings "and secured the release of additional responsive documents after requiring the [agency] to justify [its] invocation of certain FOIA Exemptions in the documents [Plaintiff's counsel] had reviewed." 80 F. Supp. 3d at 160.

Furthermore, that Plaintiff did not prevail at summary judgment does not warrant any reduction in the compensable time requested because Plaintiff is not seeking recovery for any time spent on briefing summary judgment. *See Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 62–63 (D.D.C. 2013) ("[A]ny consideration of entitlement to fees and reduction of fees for partial success relates only to the summary judgment motion and not to the prior production of documents—the work done on the summary judgment motion had no effect on the prior production.").

18

**b. The rates sought are reasonable.**

"'[R]easonable fees' are those grounded in rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *DL v. Dist. of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). To establish the prevailing market rate, "[n]o particular type of evidence can be considered gospel; 'evidence of the prevailing market rate can take many forms.'" *Id.* at 589 (quoting *Eley v. Dist. of Columbia*, 793 F.3d 97, 104 n.5 (D.C. Cir. 2015)).

In *DL,* the D.C. Circuit held that the rates set forth in the so-called "LSI *Laffey* matrix" are presumptively reasonable rates for complex federal litigation and suffice to meet a plaintiff's initial burden. *Id.* at 591. *See also Salazar v. Dist. of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015). Here, Plaintiff seeks to recover those LSI *Laffey* rates here: $658 per hour for Adam Pulver and $455 per hour for Patrick Llewellyn.[5] *See* Ex. 16 (current LSI *Laffey* matrix). These LSI *Laffey* rates are appropriate given Mr. Pulver and Mr. Llewellyn's experience in complex federal litigation, with significant experience in regulatory and FOIA matters, as is relevant to this case and as set out in detail in their accompanying declarations. *See* Pulver Decl. ¶¶ 19–23; Llewellyn Decl. ¶¶ 2–5.

The evidence before the D.C. Circuit in *DL*, some of which Plaintiff also includes here as Exhibits 17 and 18, sets forth how the LSI *Laffey* matrix has been calculated and updated, and explains why that method is a reasonable means to calculate the prevailing market rate for complex federal litigation in the District of Columbia, and superior to the rate typically advocated by the United States Attorneys' Office for the District of Columbia (the USAO Rate). As the *DL* court

---

[5] Under the LSI-Laffey Matrix, Mr. Pulver advanced to the next experience level, 11–19 years out of law school, on June 1, 2019. *See* Ex. 16. In an exercise of billing judgment, Public Citizen does not seek an award based on the higher rate of $742 per hour that would otherwise apply for work done on or after that date, i.e., the work on this motion.

held, the USAO rate does not accurately reflect D.C. market rates for complex federal litigation. 924 F.3d at 592–93. Although *DL* involved IDEA litigation, the opinion explicitly disapproved of several FOIA decisions in which courts awarded less than the LSI *Laffey* rates and concluded that adoption of the USAO rate in those cases reflected "fundamental errors." 924 F.3d at 593 (citing *Gatore v. U.S. Dep't of Homeland Sec.*, 286 F. Supp. 3d 25, 42–43 (D.D.C. 2017); *Elec. Privacy Info. Ctr. v. U.S. Drug Enforcement Admin.*, 266 F. Supp. 3d 162, 170–71 (D.D.C. 2017); and *Clemente v. FBI*, No. 1:08-cv-1252-BJR, 2017 WL 3669617, at *5 (D.D.C. Mar. 24, 2017)).

Additionally, the *DL* decision was based on the unchallenged conclusion that the case involved "complex federal litigation." *Id.* at 592. FOIA litigation is also complex federal litigation. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015). Although this Court has previously suggested certain tasks involved in FOIA litigation are not "complex," *Poulsen*, 2016 WL 1091060, at *6, an expert explained in the *DL* case that firms handling complex federal litigation do not typically charge different rates for different tasks that are necessary in a case involving a substantively complex area of federal law:

> Rather, in such litigation, firms customarily bill a client one rate for a particular attorney irrespective of the type of legal activity performed by the attorney in the matter. The complexity of tasks is accounted for in two ways other than switching rates: the reasonableness of number of hours necessary to accomplish the task and the appropriateness of the experience level or seniority of the individual assigned to undertake the task.

Ex. 18 at ¶ 18. For this reason, as Judge Tatel explained in his concurrence in *Reed v. District of Columbia*, whether rates for complex federal litigation are appropriate is not to be based on the specifics of the tasks that were eventually performed, "but rather on an assessment of the nature of [the] litigation generally." 843 F.3d 517, 528 (D.C. Cir. 2016). Even so, here, a large number of hours sought entailed complex tasks that benefited from counsel's expertise—analyzing redactions and assertions of privilege, negotiating with opposing counsel over the propriety of

20

those assertions, and drafting this motion.

Even before the D.C. Circuit's decision in *DL*, several courts in this district awarded LSI *Laffey* rates in FOIA cases—further evidence that these rates represent the prevailing market rate for FOIA litigation in D.C. *See, e.g.*, *Am. Oversight*, 2019 WL 1330481, at *10; *EPIC III*, 218 F. Supp. 3d at 49. As detailed in the accompanying affidavits, Plaintiff's counsel in this case are experienced civil litigators, each with extensive experience in both FOIA and regulatory matters. Their experience entitles them to the rates requested.

### c. The Court should award "fees on fees."

In addition to the time spent in connection with obtaining productions from ED prior to summary judgment briefing, Public Citizen seeks compensation for time spent seeking attorneys' fees. Thus far, counsel's fees-on-fees time is $16,078.30 (21.6 hours for Adam Pulver at $658 per hour and 4.1 hours for Patrick Llewellyn at $455 per hour). *See* Ex. 15.[6]

"It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Reyes*, 356 F. Supp. 3d at 173 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985) (marks omitted)). Although here the "fees on fees" sought are larger than the primary fee request, this disparity does not make the fee request unreasonable. Plaintiff diligently attempted to settle the matter of fees without the need for briefing, but ED refused to negotiate. *See* Pulver Decl. ¶¶ 17–18; ECF 29. And the number of hours spent on this motion is reasonable.

### CONCLUSION

For all foregoing reasons, Plaintiff asks this court to award a total of $26,302.20 in attorneys' fees and costs, plus reasonable attorneys' fees for future work performed in

---

[6] Plaintiff will submit updated information with its reply in support of this motion.

connection with this motion.

Dated: June 20, 2019                                    Respectfully submitted,

                                                        /s/ Adam R. Pulver
                                                        Adam R. Pulver (DC Bar No. 1020475)
                                                        Patrick D. Llewellyn (DC Bar No. 1033296)
                                                        Public Citizen Litigation Group
                                                        1600 20th Street NW
                                                        Washington, DC 20009
                                                        (202) 588-1000
                                                        apulver@citizen.org

                                                        *Counsel for Plaintiff*